IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREEM ARMSTRONG, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LOUIS S. FOLINO, *Superintendent*; CRAIG )<br>HAYWOOD, *Security Lieutenant*, ODDO, )<br>MAHLMEISTER, CAPPZO, JOHN DOE 1, )<br>JOHN DOE 2, JOHN DOE 3, and RANIERI )<br>Defendants. )<br>) | Civil Action No. 06 - 164<br><br>Judge Gary L. Lancaster /<br>Magistrate Judge Lisa Pupo Lenihan |

## **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.      RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment (doc. no. 20) be granted.

**II.      REPORT**

Plaintiff, Kareem Armstrong, a state inmate previously confined at the State Correctional Institution at Greene (SCI-Greene), located in Waynesburg, Pennsylvania, commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging violations of his rights as protected by the Eighth and Fourteenth Amendments of the United States Constitution. Named as Defendants are Louis Folino, Superintendent; Craig Haywood, Security Lieutenant; Oddo, Security Captain; Mahlmeister, Program Review Committee Member; Cappozo, Program Review Committee Member; John Doe 3, Program Review Committee Member; John Doe 1, correctional officer assigned to Block B on the 2:00 p.m. to 10:00 p.m. shift; John Doe 2, sergeant assigned to

1

Block B on the 2:00 p.m. to 10:00 p.m. shift; and Ranieri, correctional officer. Defendants have moved for dismissal of the Complaint alleging that Plaintiff failed to comply with the Pennsylvania Department of Corrections (DOC) three-step grievance process available to Pennsylvania state prisoners. For the reasons that follow, the Motion should be granted.

### A. Standard of Review

Defendants have filed a motion to dismiss or in the Alternative Motion for Summary Judgment (doc. no. 20) . Pursuant to Fed. R. Civ. Proc. 12(b)(6), a motion to dismiss cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegation." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke v. Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The complaint must be read in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976).

In addition, courts may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case in considering a motion to dismiss under Rule 12(b)(6). Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994); Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990); DiNicola v. DiPaolo, 945 F. Supp. 848, 854 n.2 (W.D. Pa. 1996) (court is entitled to take judicial notice of public records); Barber v. Grow, 929 F. Supp. 820, 822 (E.D. Pa. 1996) (in considering a Rule 12(b)(6) motion, a court must primarily consider the allegations contained in the complaint, although matters of public record, orders, items appearing in the record of the case and

exhibits attached to the complaint may also be taken into account).

Moreover, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519 (1972). Notwithstanding, the court is bound by the allegations of the complaint; it is not free to speculate that a plaintiff might be able to state a claim if given another opportunity to add more facts to the complaint. Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94 (5th Cir.), *cert. denied*, 513 U.S. 883 (1994).

Summary judgment, on the other hand, is appropriate if, drawing all inferences in favor of the non-moving party, the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. Rule Civ. Proc. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (party can move for summary judgment by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."). The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth ". . . specific facts showing that there is a genuine issue for trial . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

Plaintiff attached exhibits as part of his Complaint. Defendants relied on these materials in their motion, as well as two additional exhibits. All parties in this action have been

given ample opportunity to present materials pertinent to their claims. Accordingly, to the extent applicable, the Court will treat the pending motion as a motion for summary judgment under Fed. Rule Civ. Proc. 56.

### B. Plaintiff's Allegations

Plaintiff asserts that Defendants violated his rights against cruel and unusual punishment as protected by the Eighth and Fourteenth Amendments by failing to protect him from harm. Specifically, Plaintiff alleges that on August 20, 2004, there was fist fight in the yard which led to a security investigation that lasted until September 1, 2004. Apparently, the fight was gang related and involved the "Latin Kings." At the conclusion of the investigation, the participants in the fight all were placed in the same housing cell, Housing Unit B, Block B, Unit 13. On September 1, 2004, one of the same participants in the August 20, 2004, fight was involved in another fist fight in the day room. Defendants John Doe # 1 and John Doe # 2 intervened and all inmates involved were taken to the Restricted Housing Unit (RHU). It appears that Plaintiff received a misconduct for his involvement in the fight, pleaded guilty and received 60 days of misconduct time.

On November 29, 2004, Plaintiff was released back into general population to E Block, A Unit; the other participants were placed in administrative custody status. On November 30, 2004, Plaintiff asked Defendant Ranieri to be moved to another housing unit because he felt he was in danger from Latin King gang members. Plaintiff returned to his cell and locked the door. Sometime thereafter, he heard his door open and a member of the Latin Kings came in and assaulted him. Plaintiff went to Ranieri, showed him his wounds and was escorted to the medical department for treatment. Ultimately, he was placed in administrative custody and subsequently was transferred from SCI-Greene to SCI-Forest.

Plaintiff argues that Ranieri knew of the immediate danger to the Plaintiff and his refusal to transfer him to another housing unit constituted deliberate indifference and cruel and unusual punishment. He alleges that Defendants Haywood, Oddo, John Doe #1 were deliberately indifferent by placing all of the participants in the fist fight in the same housing unit in August of 2004. Finally, he asserts that Defendants Cappzo, Mahlmeister, and John Doe #3 were deliberately indifferent to his safety by releasing him back into general population in November of 2004.

On April 1, 2005, Plaintiff wrote inmate grievance no. 114415 complaining about the frivolous security investigation, the housing of all individuals in the same unit - which led to the September 1, 2004 fist fight -, and his attack in general housing. This grievance was directed to Lt. Workman who prepared an initial response dated April 27, 2005 (doc. no. 25, Plaintiff's response to Defendants' Motion, p. 2) . Plaintiff claims that he never received the Initial Response to his Grievance. Thereafter, on June 16, 2005, he submitted his grievance to the Superintendent at SCI-Greene noting that he never received an initial response to his grievance. On June 27, 2005, Superintendent Folino responded to Plaintiff's grievance noting that he was in possession of grievance number 114415 dated April 22, 2005, the Initial Review Response by Lt. Workman dated April 27, 2005 and his first level appeal (doc. no. 4, p. 9). Folino also noted that he did not know why Plaintiff had not received either the original or the courtesy copies of the Response. Folino responded to Plaintiff's appeal that the claims adequately were addressed in the Response and that the Response would be upheld. Plaintiff appealed this determination to Final Review. The Central Office denied his appeal due the fact that he failed to include all of the required documentation (doc. no. 4, p. 12).

### C. Failure to Exhaust Administrative Remedies

Defendants' basis for dismissal of the complaint is Plaintiff's alleged failure to have exhausted available administrative remedies as required by the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996). In this regard, in the PLRA, Congress amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C.A. § 1997e, concerning suits by prisoners. Before the amendments, prisoners challenging the conditions of their confinement under 42 U.S.C. § 1983 were not required to exhaust administrative remedies before filing suit. The PLRA amended section 1997e(a), as follows, making exhaustion a mandatory requirement.

> (a) Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), as amended.

The United States Court of Appeals for the Third Circuit analyzed the applicability of the exhaustion requirement in 42 U.S.C. § 1997e in Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000) (Bivens action brought by a federal inmate) and Booth v. Churner, 206 F.3d 289 (3d Cir. 2000) (civil rights action brought by a state prisoner). In each of these cases, the Court of Appeals announced a bright line rule that inmate-plaintiffs must exhaust all available administrative remedies before they can file an action in federal court concerning prison conditions. In so holding, the court specifically rejected the notion that there is ever a futility exception to section 1997e(a)'s mandatory exhaustion requirement. Booth, 206 F.3d at 300; Nyhuis, 204 F.3d at 66. A unanimous Supreme Court affirmed the Court of Appeals' holding in Booth v. Churner, 532 U.S. 731 (2001) where the

Court confirmed that in the PLRA Congress mandated complete exhaustion of administrative remedies, regardless of the relief offered through those administrative procedures.  In addition, in Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court clarified that the PLRA's exhaustion requirement applies to all inmate suits concerning prison life, whether they involve general circumstances or specific episodes and whether they allege excessive force or other conduct.

    The administrative grievance procedure for Pennsylvania inmates is codified in the Pennsylvania Department of Corrections Policy Statement No. DC-ADM 804-1, entitled "Consolidated Inmate Grievance Review System."  The purpose of the grievance system is to insure that every inmate confined in a Bureau of Correction facility has an avenue through which prompt resolution of any problem which arises during the course of confinement may be sought.  DC-ADM 804 ¶ 1.  The grievance system applies to all state correctional institutions and provides three levels of review:  1) initial review by the facility grievance coordinator; 2) appeal of initial review to the superintendent or regional director; and 3) final appeal to the central office chief hearing examiner.  DC-ADM 804 ¶ VI.  The administrative policy further provides that, prior to utilizing the grievance system, prisoners are required to attempt to resolve problems on an informal basis through direct contact or by sending an inmate request slip to the appropriate staff member.  DC-ADM 804 ¶ V.

    In the instant action, Defendants assert that the Complaint should be dismissed because Plaintiff failed to have exhausted his administrative remedies in that he failed to have completed the three-step grievance process provided for in DC-ADM 804.  In this regard, Defendants assert that Plaintiff did not complete the three-step process because Central Office refused ro review his grievance on the basis that he did not submit the required documentation, *i.e.*,

a copy of the Initial Response, which he alleged he never received.[1]  This Court does not believe that Central Office's failure to have reviewed Plaintiff's grievance no. 114415 due to his failure to have provided something he claims he did not possess is a sufficient basis upon which to grant summary judgment in Defendants' favor.

Nonetheless,  as Defendants point out, Plaintiff's failure to have pursued his grievance in a timely manner does provide a sufficient basis upon which to grant Defendants' summary judgment.  In this regard, the Court of Appeals for the Third Circuit has held that a prisoner's failure to comply with the procedural and substantive requirements of DOC's grievance policy, as set forth in DC ADM 804, results in procedural default, thereby precluding an action in federal court.  *See* Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004).  The United States Supreme Court recently adopted a similar holding in Woodford v. Ngo, ___ U.S. ___, 126 S.Ct. 2378 (June 22, 2006) wherein it held that an untimely "or otherwise procedurally defective administrative grievance or appeal" does not satisfy the PLRA's mandatory exhaustion requirement. Woodford, 126 S.Ct. at 2382.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."  This Court has described the doctrine as follows: "[A]s a general rule ⋯ courts should not topple over administrative decisions unless the administrative body not only

---

[1] In this regard, DOC amended its Grievance Policy effective January 3, 2005 to require inmates to include photocopies of all documentation for final review including the Initial Grievance, Initial Review, the Appeal to the Facility Manager and the Facility Manager's decision.  DC-ADM ¶ (VI)(D)(1)(g).

> has erred, but has erred against objection made at the time appropriate under its practice." Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

Woodford, 126 S. Ct. at 2385-2386 (internal citations, quotations and footnotes omitted).

The Court further noted that "[c]onstruing § 1997e(a) to require proper exhaustion also fits with the general scheme of the PLRA, whereas respondent's interpretation would turn that provision into a largely useless appendage. The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodard, 126 S. Ct. at 2387. The Court concluded that the benefits of exhaustion could only be realized if the prison grievance system is given a fair opportunity to consider the claims, which required the grievant to comply with the procedural rules. Woodford, 126 S.Ct. at 2388.

Pennsylvania's Consolidated Inmate Grievance Review System requires that inmate grievances be in writing and in the format provided on the forms supplied by the institution. DC-ADM 804 ¶ (VI)(A)(1)(f). An initial grievance must be submitted by the inmate to the Facility Grievance Coordinator within fifteen (15) working days after the event upon which the claim is based. DC-ADM 804 ¶ (VI)(A)(1)(h). The Facility Grievance Coordinator must assign a grievance tracking number to all grievances (even rejected grievances) upon receipt and enter all grievances into the Automated Inmate Grievance Tracking System. DC-ADM 804 ¶ (VI)(B)(1)(a). If the Facility Grievance Coordinator determines that the issue being grieved is in accordance with DC-ADM 804, he or she will designate a staff member to serve as the Grievance Officer for that issue.

DC-ADM 804 ¶ (VI)(B)(1)(e). The Grievance Officer must provide a written response to the inmate within ten working days, including a brief rationale summarizing the conclusions and any action taken or recommended to resolve the issues raised in the grievance. DC-ADM 804 ¶ (VI)(B)(1)(h). An inmate may appeal an Initial Review decision, or grievance restriction, to the Facility Manager in writing, within five working days from the date of receipt by the inmate of the Initial Review decision. DC-ADM 804 ¶ (VI)(C)(1)(b). The Facility Manager must notify the inmate of his/her decision within fifteen working days of receiving the appeal; the decision may consist of upholding the decision, modification, reversal, remand, or reassignment for further fact-finding. DC-ADM 804 ¶ (VI)(C)(2)(c). An inmate who is dissatisfied with the disposition of an appeal from the Facility Manager, may submit an appeal to the Secretary's Office of Inmate Grievances and Appeals, within five working days of receiving the decision. DC-ADM 804 ¶ (VI)(D)(1)(b). The Secretary's Office must respond to all appeals within 30 working days and ensure that all appeals and responses are properly maintained in the Automated Inmate Grievance Tracking System. DC-ADM 804 ¶ (VI)(D)(2)(a).

In the instant action, Plaintiff's Grievance No. 114415 was not submitted in accordance with DOC's time requirements as it is dated April 1, 2005, well over seven months after the first incident and four months after the second incident (doc. 22-3, p.6). On April 6, 2005, Plaintiff's Grievance was rejected as untimely under DOC regulations because it was not submitted within 15 working days after the event in question (doc. no. 22-3, p. 8). Although the grievance ultimately was addressed by Lt. Workman (doc. no. 22-3, pp. 11-12), that does not change the fact that his court may rely on his procedural default as a basis for dismissal of his claim. *Cf*. Harris v. Reed, 489 U.S. 255, 264, n.10 (1989). Moreover, Plaintiff could have sought an exception to the

10

15 day rule.

In the absence of any controlling authority to the contrary, this Court is required to follow the directive of the United States Supreme Court and grant the Motion for Summary Judgment due to the Plaintiff's failure to have exhausted his available administrative remedies. *Accord* Scerbo v. Orefice 2006 WL 3762000, *8 (M. D. Pa. Dec. 20, 2006) (holding that claim set forth in Plaintiff's grievance filed over nine months after the alleged incident was procedurally defaulted).

### III.     CONCLUSION

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

Dated: 2-6-07

Lisa Pupo Lenihan
United States Magistrate Judge

cc:     Gary L. Lancaster
United States District Judge

Kareem Armstrong
FC-1347
P.O. Box 945
S.C.I. Forest
Marienville, PA  16239

Counsel of Record